United States District Court
Southern District of Texas

**ENTERED**

March 13, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| WAYNE THOMAS, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-2001 |
| 5860 SAN FELIPE LTD., | § § § | |
| Defendant | § § § § | |

**MEMORANDUM AND OPINION**

This is a public accommodation case brought by a "tester," a wheelchair-bound individual who visits sites open to the public to determine ADA compliance. Wayne Thomas alleges that a strip mall he visited in Houston, Texas violates the Americans with Disabilities Act. 42 U.S.C. § 12101, *et seq.* After a bench trial and review of a voluminous record of architectural and construction information, expert analysis, and other documents, the court found and concluded that Thomas had standing to bring his claims. (Docket No. 72). The court also found and concluded that one of the modifications Thomas asked the court to order the property to make to comply with the ADA was readily achievable. (*Id.*). The court ordered the property to modify the curb ramp in front of the Fu's Garden Chinese Restaurant with a dropdown-style curb ramp or a parallel-style curb ramp that does not protrude into the access aisle, to comply with the ADA requirements for an existing facility. (Docket Entry No. 73).

The property moved for a new trial under Federal Rule of Civil Procedure 59(a), or in the alternative, to modify the court's final judgment under Federal Rule of Civil Procedure 59(e). (Docket Entry No. 76). The property argued that the court should grant a new trial on the issue of

whether the proposed modifications to the curb ramp in front of the Fu's Garden restaurant to address deficiencies under the ADA meet its "readily achievable" standard. The court granted the motion, (Docket Entry No. 88), and allowed the property to supplement the trial record on "the issue of whether the curb ramp is actually feasible under the standards set by the governing law," (Docket Entry No. 103 at 2:16–18). The property has now supplemented the record. (Docket Entry No. 102).

Based on a careful review of the brief to supplement the trial record, the response, and the reply, the full record, and the applicable law, the court finds and concludes that the property's new evidence does not warrant modifying the judgment. Thomas's motion for entry of judgment, (Docket Entry No. 105), is granted. The final judgment, (Docket Entry No. 73), is not modified. The reasons are explained below.

## I.    Background

The strip center at 5860 San Felipe contains multiple tenant stores and restaurants, including the Fu's Garden Chinese Restaurant. After the bench trial, the court found that the curb ramp in front of Fu's Garden was not ADA-compliant and that a readily achievable modification would correct the deficiency. (Docket Entry No. 72 at 18). The court found that the property was not required to make other modifications that Thomas requested, including creating more handicap accessible parking spaces, regrading the parking lot or sidewalks, or putting automatic door openers on the door of each store. (*Id.* at 1–2). The court also found that Thomas had standing because he had visited the property several times in the recent past and intended to visit the property again. (*Id.* at 12). The court entered final judgment ordering the property to modify or replace the existing curb ramp adjacent to Fu's Garden with a dropdown-style curb ramp *or* a

parallel-style curb ramp that does not protrude into the access aisle, to comply with the ADA requirements. (Docket Entry No. 73).

The property argues that the proposed ramps are not feasible because they will reduce the width of the sidewalk outside the property "to approximately 24-inches, which violates the minimum ADA width" and creates "an unsafe condition" that "will require an Engineer's Stamp or possibly an Architect Stamp on the plan submitted to the City of Houston during the permitting process." (Docket Entry No. 102 at 10). The property argues that the "proposed drop-down-style curb ramp . . . would extend perpendicularly across the sidewalk and into the swinging path of the doorways at Fu's" Garden; "would reduce the width of the walkway to less than 32 inches"; and "would encroach into the 60" x 60" minimum maneuvering clearance in front of the doors at Fu's" in violation of ADAAG § 404.2.4. (*Id.*). The property also argues that the parallel curb ramp is not feasible. The current sidewalk, which is over 6 inches above the pavement, must have handrails to comply with the ADA. (*Id.*). As a result, the "ramp would encroach into the sidewalk and reduce the width of the accessible route to below the minimum requirements in violation of the 2010 ADA Standards." (*Id.*). In addition, the property argues that the changes would subject it to a costly permitting process that would make the alterations too difficult to perform. (*Id.* at 11).

Thomas responds that the property relies on the wrong ADA guideline. The property cites ADA Accessibility Guidelines Chapter 6. According to Thomas, Chapter 4, not Chapter 6, applies to the sidewalk in question. (Docket Entry No. 105 at 9–15). As a result, Thomas argues, the property incorrectly calculated the sidewalk width and can install the ramp without running afoul of the ADA's minimum 32-inch width requirement. (*See id.*).

## II.   Analysis

The property argues that it cannot comply with this court's order to modify the curb ramp near Fu's Garden restaurant because doing so would "both pose a safety hazard and violate the Americans with Disabilities Act." (Docket Entry No. 76 at 6).  The property claims that "prior to trial, [it] consulted with experts to determine if the curb . . . could be modified, but the solutions presented did not comply with the ADA." (*Id.* at 9).  The property also states that after the court's order, it consulted with a Texas architect and a Texas Registered Accessibility Specialist, Parker Atkins, about making the curb ramp modifications, and those experts stated that the curb ramp cannot be modified to comply with the ADA and ADA Accessibility Guidelines.  (*Id.*; *accord* Docket Entry No. 102 at 6).

Atkins opines that the "drop-down style curb ramp is not feasible because it would extend perpendicularly across the sidewalk and into the swinging path of the doorways at Fu's" Garden Restaurant; would "reduce the width of the walkway to less than 32 inches"; and "would encroach into the 60" x 60" minimum maneuvering clearance in front of the doors to the restaurant as required by ADA 404.2.4." (Docket Entry No. 102-1 at 3).  Atkins opines that the parallel curb ramp would have "a rise greater than 6 inches," requiring a handrail to comply with the ADA. (*Id.*).  After accounting for the handrail's encroachment onto the sidewalk, "[t]he width of the accessible route" would be "less than the minimum requirement of 32" per ADA 403.5.1." (*Id.* at 4).  "The actual width when taking into account the handrails would be approximately 24" with doors opened at Fu's Garden Chinese Restaurant," which would violate the ADA because the "2010 ADA Advisory 603.2.3 clearly states that a door swing cannot reduce the required width of an accessible route." (*Id.*).

4

Atkins's opinions do not warrant reversing the judgment.  First, neither the record nor the law supports Atkins's opinion that the Fu's Garden restaurant door swing makes the property's sidewalk too narrow.   Atkins's opinions can be summarized as follows:

1. The ADAAG requires an accessible route to be at least 32 inches wide.

2. The existing sidewalk at Fu's Garden is 101 inches wide.

3. Installing an ADA compliant curb ramp would reduce the accessible route by 36 inches, leaving 65 inches (101 inches minus 36 inches).

4. An additional 5 inches must be subtracted to account for handrails along the ramp, leaving 60 inches (65 inches minus 5 inches).

5. The 36-inch width of the Fu's Garden entrance door must also be subtracted because it would temporarily impede the accessible route, leaving only 24 inches (60 inches minus 36 inches).

(*See id.* at 12–18; *see also* Docket Entry No. 105 at 7).

As Thomas points out, the property's argument depends on ADAAG § 603.2.3.  (Docket Entry No. 105 at 13 at 8–10).  But this provision comes from Chapter 6 of the ADAAG, which governs Plumbing Elements and Facilities.  Section 603 governs "Toilet and Bathing Rooms."  Section 603.1 states that "[t]oilet and bathing rooms shall comply with 603."  Section 603.2.3 states that "[d]oors shall not swing into the clear floor space or clearance required for any fixture."  This obligation to "clear floor space" within "toilet and bathing rooms" does not apply to the exterior sidewalk at issue.

Temporary disruptions of passageways normally do not run afoul of the ADA.  The readily accessible requirement "does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs."  28 C.F.R. § 36.211(b).  In addition, Section 36.211(b) permits "a temporary interruption that blocks an accessible route," giving as an example the "restocking of shelves."  *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 75 Fed. Reg. 56,236, 56,270 (Sept. 15, 2010).  For instance, "the accessible

5

routes in offices or stores are commonly obstructed by boxes, potted plants, display racks, or other items so that the routes are inaccessible to people who use wheelchairs." *See* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 73 Fed. Reg. 34,508, 34,523 (June 17, 2008). "[T]he accessible route must be maintained and, therefore, these items are required to be removed." *Id.* But "[i]f the items are placed there temporarily—for example, if an office receives multiple boxes of supplies and is moving them from the hall to the storage room—then § 36.211(b) excuses such 'isolated or temporary interruptions.'" *Id.*

In this case, the fact that an entrance/exit door will swing into the exterior sidewalk multiple times a day does not mean that the sidewalk is so obstructed as to be inaccessible. The door swing is a temporary obstruction that occurs when patrons enter or exit the restaurant. The door does not appear to be propped open for an extended period. When opened to allow patrons to enter or leave, the door does not remain open so long as to make the sidewalk too narrow. An issue would arise if the restaurant regularly kept its doors open during all or most of the time the restaurant was open, obstructing the sidewalk. *See, e.g.*, *Landis v. Washington State Major League Baseball Stadium Pub. Facilities Dist.*, 403 F. Supp. 3d 907, 921 (W.D. Wash. 2019) (denying summary judgment for the property owner on a claim that fan-moved line stanchions routinely obstructed the pathway in the concession lines). The record does not include evidence that Fu's Garden restaurant or other stores at the property regularly keep their doors propped open or otherwise obstruct the sidewalk. (*See* Docket Entry No. 72 at 9, 17 (finding that tenants did not regularly put out tables or merchandise on the sidewalk in a way that would obstruct the sidewalk)).

The Guide to the ADA Accessibility Standards offers additional support for the conclusion that the work needed to address the ADA violations will not itself create ADA violations. (Docket Entry No. 105-2 at 11). "[T]he ADA Accessibility Guidelines ('ADAAG') are developed by the

Access Board," the same organization that creates the Guide to the Accessibility Standards. *Bailey*

*v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 484 F. Supp. 3d 346, 366 (E.D.

La. 2020), *aff'd sub nom. Bailey v. France*, 852 F. App'x 852 (5th Cir. 2021) (per curiam).[1]  The

Guide answers several common questions, including whether "doors [can] swing into required

clear floor or ground space?"  The rule is that doors can "swing into required clear floor or ground

spaces," except in the following "specific instances":

- clear floor space at controls for automatic and power assisted doors and gates (404.3.5);

- fixture clearances in toilet and bathing facilities (except those that are single user where wheelchair space beyond the door swing is provided) (603.2.3);

- clear floor space required at benches in saunas and steam rooms (612.2);

- clear floor space required at tactile signs, which must be beyond the arc of any door swing between the closed position and 45 degree open position (703.4.2);

- dressing, fitting, or locker rooms unless wheelchair space is provided beyond the arc of the door swing (803.3).

(Docket Entry No. 105-2 at 11).  "In other locations, doors can swing into clear floor or ground

space, although locating door swing outside required clearances is advisable." (*Id.*).  Courts have

not found ADA violations based on a door swing that momentarily reduces sidewalk width.  *See,*

*e.g.*, *Lopez v. Mukai Maravilla, LLC*, No. 215CV09624ODWPLAX, 2017 WL 11634818, at *3

(C.D. Cal. Jan. 13, 2017) (rejecting the argument that the sidewalk outside a store was inaccessible

because the door swings open into the sidewalk).

---

[1] Several district courts have relied on the Guide to the ADA Accessibility Standards.  *See, e.g.*, *Brooke v. Mikado 1311 LLC*, No. CV 23-6244 PA (SKX), 2024 WL 4868645, at *3 (C.D. Cal. June 20, 2024); *Gastelum v. TC Heritage Inn 2 of Bakersfield LLC*, No. 1:21-CV-1230 JLT CDB, 2023 WL 405028, at *7 (E.D. Cal. Jan. 25, 2023); *Gastelum v. Blue Diamond Hosp. LLC*, No. 5:21-CV-06234-EJD, 2023 WL 4771191, at *2 (N.D. Cal. July 25, 2023).

The property does not respond to these points. (Docket Entry No. 106). Instead, the property relies on its expert, arguing that Atkins "is a registered accessibility specialist" and "is licensed by the State of Texas to inspect and advise on ADA compliance." (Docket Entry No. 106 at 1). The property argues that "[t]he State of Texas entrusts him to tell it whether or not a property complies with the ADA." (*Id.*). The property does not provide a basis to find that Texas or Houston regulators will deny the property's proposed plans to make a curb ramp ADA compliant based on a perceived ADA sidewalk violation, in the face of a federal-court ruling that the proposed plans would not violate the ADA. Nor does the property cite authority showing that Texas applies more stringent accessibility guidelines that preclude the proposed curb-ramp modifications or that, if Texas has more stringent guidelines, federal ADA guidelines would not preempt them. The new evidence does not support finding that neither a dropdown-style curb ramp nor a parallel-style curb ramp is readily achievable. *See Kreisler v. Second Ave. Diner Corp.*, No. 10 CIV. 7592 RJS, 2012 WL 3961304, at *9 (S.D.N.Y. Sept. 11, 2012) ("While Defendants have established that it is *possible* that City authorities will not permit them to build a ramp, they have provided no explanation as to why they should be excused from trying."), *aff'd*, 731 F.3d 184 (2d Cir. 2013)

Second, the curb ramp would not infringe the mandated maneuvering clearance in front of the Fu's Garden restaurant because there is a space of at least 60 inches from the entrance/exit door to the curb ramp. Atkins opines that there will be 5 feet between Fu's Garden's entrance door and the ramp. (*See* Docket Entry No. 102-1 at 9 ("The width of the sidewalk was measured at 8.5 feet. A ramp will encroach on a minimum of 3' of sidewalk width plus an additional 6" for a handrail on the restaurant side of the ramp, which effectively reduces the accessible sidewalk route to 8.5'-3.5' = 5'.")). Thomas does not dispute this measurement. (*See* Docket Entry No. 105 at 7 ("An additional 5 inches must be subtracted to account for handrails along the ramp, leaving 60 inches

8

(65 inches minus 5 inches).")).  The ADAAG includes the door swing in its maneuvering clearance

in front of entrance and exit doors:



(a)
front approach, pull side

ADAAG § 404.2.4.  It requires that the property include 60" of space perpendicular to the entrance

doorway and 18" of space parallel to the doorway.  *Id.*; *see also Kohler v. Bed Bath & Beyond of*

*California, LLC*, 778 F.3d 827, 831–32 (9th Cir. 2015) (relying on this diagram to exclude the wall

width from the maneuvering-clearance calculation).  Both of those requirements are met, as shown

in the proposed diagram:



9

(Docket Entry No. 102-1 at 12).  The proposed curb ramp does not violate ADAAG § 404.2.4.

Third, the property's claims of financial hardship are not persuasive.  The property argues that the alterations will be costly because "the changes require permitting by the City of Houston, stamped engineering plans, registration, plan review, and final inspection by a Registered Accessibility Specialist." (Docket Entry No. 102 at 11).  The property also argues that "additional modification[s]" will "require jack hammering the current ramp and saw cutting into the sidewalk." (*Id.* at 7).  But the affidavit does not offer additional details to support the extent of these costs or of resulting business disruption.  Jack hammering and cutting into a sidewalk are routine.  They could be scheduled to take place before or after the busiest times for the strip center.  The alleged difficulties and costs in making the ADA-required changes are not as severe as those that this court credited at trial, including removing bollards and restructuring the parking lot. (Docket Entry No. 72 at 16–17).  The property did not argue at trial that the dropdown-style curb ramp or the parallel-style curb ramp were prohibitively costly. (*See id.* at 17–18).  Nor did it argue, for any of the proposed modifications, that the permitting process itself would be prohibitively costly.  The testimony at trial included only a few references to permitting and approval. (*See, e.g.*, Docket Entry No. 66 at 127:1–14, 184:22–185:14).  The testimony does not support finding that state approval was necessary or, if necessary, particularly difficult to obtain.  The property has not carried its burden to show that constructing an ADA-compliant ramp is not readily achievable.

For these reasons, the property's arguments and Atkins's additional opinions do not require the court to amend its judgment or hold a new trial.

## III.    Conclusion

The property must "modify or replace the existing curb ramp adjacent to the Fu's Garden Chinese Restaurant with a dropdown-style curb ramp or a parallel-style curb ramp that does not

protrude into the access aisle[,] to comply with the requirements for an existing facility under the ADA." (Docket Entry No. 73 ¶ 4).  Thomas's motion for entry of the judgment, (Docket Entry No. 105), is granted.

SIGNED on March 13, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge